**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| NAIM VIJDANI,<br><br>                         Petitioner,<br>         vs.<br><br>JOHN MATTOS, *et al.*,<br><br>                         Respondents. | Case No.: 2:25-cv-02496-GMN-EJY<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

Pending before the Court is Petitioner Naim Vijdani's Amended Petition for Habeas Corpus Relief under 28 U.S.C. § 2241, (ECF No. 9).  Federal Respondents Michael Bernacke, Todd Lyons, Kristi Noem, Pamela Bondi, and Kerri Quihuis filed a Response, (ECF No. 21).  Respondent John Mattos also filed a Response, (ECF No. 17).  Petitioner replied, (ECF No. 22).  For the reasons discussed below, the Court GRANTS the Petition.

## I.   BACKGROUND

Petitioner Naim Vijdani was born in Iran. (Am. Pet. 4:5, ECF No. 9).  In 1995, when Petitioner was around fifteen years old, he fled Iran with his parents and siblings as religious refugees due to their adherence to the Baha'i faith. (*Id.* 4:5–7).  Petitioner was granted lawful permanent resident status in 1995. (Resp. 1:24–25, ECF No. 21).  Petitioner was placed in removal proceedings and ordered removed to Iran on September 11, 2017. (*See* Removal Order, Ex. C to Resp., ECF No. 21-3).  Petitioner faced state criminal charges and was released from criminal custody on a presently unknown date in 2020. (Reply 3:3–4, ECF No. 22).  ICE did not to detain Petitioner after his release from criminal custody despite the existence of the final order of removal. (*Id.* 3:4–6).  On November 5, 2025, Petitioner was detained by ICE. (Am. Pet. 5:3–4).  Petitioner now moves for habeas relief.

## II.    LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III.    DISCUSSION

Petitioner argues that he is entitled to habeas relief because (1) his detention violates his Fifth Amendment right to due process because his removal is not reasonably foreseeable as required under *Zadvydas v. Davis*, 533 U.S. 678 (2001); (2) his detention violates the Immigration and Nationality Act ("INA"); (3) ICE's current policy and procedures relating to third-country removals violate the Administrative Procedure Act ("APA") and Petitioner's Fifth Amendment due process rights; and (4) Petitioner's detention under that policy violates his Fifth Amendment due process rights. Before the Court addresses the merits of the Petition, it must first address the Order to Show Cause ("OSC") that it issued in this case.

### A. Order to Show Cause

On December 15, 2025, Petitioner filed a pro se Petition for Writ of Habeas Corpus. He did not name any respondents. Following its screening of the Petition, on December 19, 2025, the Court, among other things, ordered that Mattos not remove Petitioner from the district and ordered the Clerk to mail a copy of the Petition and the December 19, 2025, Order to Mattos, at the Nevada Southern Detention Center. (Dec. 19 Order 4:4, 4:10–12, ECF No. 3).

The FPD filed an Amended Petition for Habeas Corpus on January 15, 2026. The Amended Petition added the above-named Federal Respondents to this action. On February 2, 2026, the Court issued a subsequent order addressing service of the FPD's Amended Petition on the now-named Federal Respondents. As relevant here, the Court ordered that "Petitioner shall not be transferred out of this District." (Feb. 2 Order 2:17, ECF No. 11).

On February 12, 2026, Petitioner's counsel was informed by Petitioner's brother that over a week prior, Petitioner had been placed on suicide watch at NSDC and then subsequently released from custody. (Mot. Status Check 2:17–19, ECF No. 14). A search of the detainee locator showed that Petitioner was still in ICE custody but included a note to "call ice for details." (*Id.* 2:21–22). Petitioner's counsel was not previously notified of any change in Petitioner's detention, so counsel reached out to the U.S. Attorney's Office. (*Id.* 3:6–16). AUSA Summer Johnson informed Petitioner's counsel that Petitioner was at Columbia Care Center and that she was working to confirm the address of that location and determine how counsel could contact Petitioner. (*Id.*). Petitioner's counsel thereafter filed a Motion for Status Check, explaining that they had reason to believe Respondents moved Petitioner out of the district in violation of this Court's December 19, 2025 Order. (*Id.* 3:17–18). The Court thereafter ordered Respondents to show cause as to why they should not be held in contempt of Court for transferring Petitioner out of the district. (*See* Minute Order, ECF No. 15). Federal Respondents and Respondent Mattos filed Responses, (ECF Nos, 18, 19).

Federal Respondents state that they did not act in defiance of the Court's orders. (OSC Resp. 3:21, ECF No. 18). They inform the Court that Petitioner was transferred from NSDC on February 1, 2026, meaning the Federal Respondents newly named in the Amended Petition were not yet subject to the Court's February 2, 2026 Order prohibiting Petitioner's removal from the district. (*Id.* 3:21–24). Federal Respondents also state that Petitioner's transfer to Columbia Care Center in South Carolina for in-patient mental health treatment was medically

necessary to provide him with adequate medical and mental health treatment.[1]  They further contend that they have taken steps to ensure that Petitioner's counsel has meaningful access to her client notwithstanding his transfer.  They state that on February 17, 2026, they provided counsel with instructions and information necessary to contact Petitioner at his current facility.  (*Id.* 5:14–16).  The Court notes that it appears Federal Respondents did not take steps to ensure Petitioner's counsel had meaningful access to her client until *after* Petitioner's counsel found out about his transfer from a third-party, inquired with the U.S. Attorney's Office about the transfer, filed a Motion for Status Check with the Court, and the Court issued an Order to Show Cause.  However, based on the timing of Petitioner's transfer on February 1 and the Court's February 2 Order, Federal Respondents are correct that they were not yet subject to a court order not to transfer Petitioner out of this jurisdiction when the transfer took place.  If Respondents were subject to the Court's Order, they would have been required to seek permission from the Court and notify Petitioner's counsel prior to a medically necessary transfer occurring.  Because the Federal Respondents were not subject to the Court's Order prohibiting Petitioner's transfer, the Court discharges the order to show cause against the Federal Respondents.

Respondent Mattos—who was subject to the Court's order to not remove Petitioner from the district by way of the December 19 Order that was mailed to him—states he did not receive a copy of the Order. (Mattos OSC Resp. 2:3, ECF No. 19).  Of course, the Court has no way to verify the truth of this statement.  Mattos does not, for example, submit an affidavit or declaration attesting to not receiving the December 19 Order.  Regardless, he explains that on December 31, 2026, ICE notified CoreCivic that Petitioner was to be transferred to ICE's LVG location no later than 7:00 am on February 1, 2026.  CoreCivic staff complied, and Petitioner

---

[1] Federal Respondents state that there are no DHS-contracted inpatient mental health treatment facilities located within Nevada that can provide the required inpatient services, so Petitioner had to be transferred out of the district. (OSC Resp. 5:6–7).

was transferred the following day.  Mattos explains that he has physical custody over detainees at NSDC, but he does not have the legal authority to detain, transfer, hold, or release ICE detainees that are detained at NSDC because ICE detainees are detained by the U.S. Department of Homeland Security, not CoreCivic.  Mattos ultimately concludes that Petitioner's transfer was for Petitioner's benefit and does not divest the Court of jurisdiction.[2] (*Id.* 2:20–21).  Because of the described constraints on Mattos's authority, the Court discharges the order to show cause against him.

Now the Court turns to the merits of the Petition.

**B. *Zadvydas* Claim**

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.  The Supreme Court has held that "the Due Process Clause protects a [noncitizen] subject to a final order of deportation." *Zadvydas*, 533 U.S. at 693–94.  In *Zadvydas*, the Supreme Court held that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. *Id.* at 699.

The authority of ICE to detain noncitizens under federal law derives from 8 U.S.C § 1231, which directs the Attorney General of the United States to affect the removal of any noncitizen from this country within 90 days of a final order of removal. 8 U. S. C. § 1231(a)(1). The removal period begins on the latest of three dates: (1) the date the order of removal becomes "administratively final," (2) the date of the final order of any court that entered a stay of removal, or (3) the date on which the [noncitizen] is released from non-immigration detention or confinement. § 1231(a)(1)(B).  During the removal period, detention is mandatory.

---

[2] Indeed, Federal Respondents agree that the Court maintains jurisdiction over this habeas matter. (Federal Respondents OSC Resp. 4:24–26).

§ 1231(a)(2).  Under § 1231, the removal period may be extended beyond 90 days for a variety of reasons including a determination by DHS that "removal is not practicable or proper." *Id.*

Because "[a] statute permitting indefinite detention . . . would raise a serious constitutional problem," the Supreme Court has "read an implicit limitation" into the statute and has held that a noncitizen may only be detained for "a period reasonably necessary" to effectuate their removal. *Zadvydas*, 533 U.S. at 682.  When a removable noncitizen is detained beyond this reasonable time and "removal is not reasonably foreseeable, the court should hold continued detention unreasonable." *Id.* at 699.  The Supreme Court adopted a six-month period of presumptive reasonableness after the removal order is final and confirmed that "[a noncitizen] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 710.  The Court further determined that "after this 6–month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701.  If the Government fails to meet its burden, then the noncitizen must be released from detention. *See Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018).

### 1.  Rebuttable Presumption

The Court first addresses the presumption of reasonability because Petitioner is within the post-removal period.  Federal Respondents argue Petitioner cannot seek relief under *Zadvydas* because he has not yet been detained for six months. (Resp. 2:24–3:5).  As another judge in this district has explained, in *Zadvydas*, the Supreme Court adopted this six-month "presumption" to "guide lower court determinations." *Alkarori v. Nevada S. Det. Ctr.*, No. 2:25-CV-02567-MMD-MDC, 2026 WL 266756, at *2 (D. Nev. Feb. 2, 2026) (quoting *Zadvydas*, 533 U.S. at 701)).  But that presumption did not create a bright line rule that would

"automatically authorize all detention until it reaches constitutional limits." *See Ali v. Dep't of Homeland Sec.*, 451 F. Supp. 3d 703, 707 (S.D. Tex. 2020).

Indeed, multiple district courts have found that the six-month presumption in *Zadvydas* is rebuttable. *See Tumasov v. Doe 1*, No. 26CV590-LL-DEB, 2026 WL 458146, at * 2 (S.D. Cal. Feb. 18, 2026) (citing *Trinh v. Homan*, 466 F. Supp. 3d 1077, 1092 (C.D. Cal. 2020) ("At no point did the *Zadvydas* Court preclude a noncitizen from challenging their detention before the end of the presumptively reasonable six-month period."); *Hoang Trinh v. Homan*, 333 F. Supp. 3d 984, 994 (C.D. Cal. 2018) ("The Supreme Court in *Zadvydas* outlined a 'guide' for approaching these detention challenges. . . not a prohibition on claims challenging detention less than six months.") (quoting *Zadvydas*, 533 U.S. at 700–01); *Uzzhina v. Chestnut*, No. 1:25-cv-01594-DAD-SCR, 2025 WL 3458787, at *3 n.3 (E.D. Cal. Dec. 2, 2025) ("The fact that a noncitizen has been held in-custody less than six months does not foreclose a claim that his or her detention is unlawful under *Zadvydas*."); *Medina v. Noem*, 794 F. Supp. 3d 365, 375 (D. Md. 2025) (noting that "what *Zadvydas* did make clear was that it was adopting a presumption—not a conclusive bar to adjudication of whether continued detention is authorized that lifts only after six months have elapsed"); *Ali*, 451 F. Supp. 3d at 707 ("This six-month presumption is not a bright line, however, and *Zadvydas* did not automatically authorize all detention until it reaches constitutional limits.")).  In contrast, if the Court were to follow Respondents' proposed interpretation, "the Government would be permitted to detain noncitizens ordered removed for up to six months even when their removal is impossible." *Zavvar v. Scott*, No. CV 25-2104-TDC, 2025 WL 2592543, at *5 (D. Md. Sept. 8, 2025).

The Court agrees with these courts' reasoning and finds the six-month presumption in *Zadvydas* is rebuttable and therefore does not foreclose claims challenging detention less than six months.  Here, Petitioner has been detained for nearly four months.  Therefore, Petitioner's 90-day post-removal period has passed, and if Petitioner can demonstrate that there is no

significant likelihood of removal in the reasonably foreseeable future, he is eligible for release under supervision.

### 2. Significant of Likelihood of Removal

Petitioner demonstrates there is no significant likelihood of removal in the reasonably foreseeable future and Respondents fail to respond with evidence sufficient to rebut that showing. Petitioner alleges that ICE is evidently unable to remove him to Iran, and he is not a citizen of and has no connection to any other country. (Am. Pet. 9:15–16). He contends that no specific plans have been made to deport him, and no third country designation has been made. (*Id.* 14:16–18). Petitioner's allegations that no specific plans have been made to deport him, and no third country designation has been made demonstrates there is no significant likelihood of removal in the reasonably foreseeable future. Respondents' inability to effectuate removal in the over eight years since an immigration judge issued his final order of removal further supports Petitioner's claim that removal is not significantly likely in the reasonably foreseeable future.

In response, Respondents merely state that ICE continues to seek the necessary travel documents to repatriate Petitioner to Iran. (Resp. 3:6–7). They fail to provide the Court with any evidence whatsoever to support their assertion, they do not provide the Court with any real detail on the efforts they are taking to seek necessary travel documents, and based on their assertion, it is clear to the Court that they do not currently have any travel documents for Petitioner. The Respondents therefore fail to rebut the showing that there is no significant likelihood of removal in the reasonably foreseeable future.

In sum, Petitioner effectively rebuts the presumptive reasonableness of his nearly four-month long detention and Respondents fail to respond with any evidence that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future. Therefore,

the Court finds Petitioner's continuing detention violates the INA and the Due Process Clause of the Fifth Amendment and that he is eligible for relief under *Zadvydas.*

### C. Third Country Removal Policy

Petitioner contends that ICE's policy of removing noncitizens to a third country with no notice or opportunity to seek fear-based protection violates his due process rights and constitutes arbitrary and capricious agency action in violation of the APA. (Am. Pet. 15:12–14). Respondents do not respond to this ground for relief. *See* LR 7-2(d).

As the Court has previously found in *Cavieres Gomez v. Mattos*, No. 2:25-cv-00975-GMN-BNW, 2025 WL 3101994 at *6–7 (D. Nev. Nov. 6, 2025), Petitioner has a due process right to receive meaningful notice and opportunity to present a fear-based claim to an immigration judge before DHS deports him to a third country. "Immigration proceedings must provide the procedural due process protections guaranteed by the Fifth Amendment." *Vilchez v. Holder*, 682 F.3d 1195, 1199 (9th Cir. 2012) (citing *Lacsina Pangilinan v. Holder*, 568 F.3d 708, 709 (9th Cir. 2009)). "A 'noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation.'" *Nguyen v. Scott*, 796 F. Supp. 3d 703, 727 (W.D. Wash. Aug. 21, 2025) (quoting *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019) (citing *Mathews v. Eldridge*, 424 U.S. 319, 349 (1976)). "[I]ndividuals whose rights are being determined are entitled to notice of the issues to be adjudicated, so that they will have the opportunity to prepare and present relevant arguments and evidence."*Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999). "In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country." *Najjar v. Lynch*, 630 F. App'x. 724, 725 (9th Cir. 2016) (non-precedential memorandum disposition). Thus, in accordance with the ample case law above, Petitioner has

a due process right to receive meaningful notice and opportunity to present a fear-based claim to an immigration judge before DHS deports him to a third country.[3]

### D. Requested Relief

First, Petitioner requests that he be released immediately, (Am. Pet. 17:16), and transported back to Las Vegas, Nevada, (Reply 22:2–3). The remedy for a *Zadvydas* claim is generally release of the habeas petitioner under conditions of supervision. *Zadvydas* explains that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." 533 U.S. at 699–700. It further provides that the noncitizen's "release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions." *Id.* at 700. Moreover, when a court considers a due process claim, it may tailor relief to the specific problem that gives rise to the due process violation. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Because the Court holds that Petitioner's continued detention violates the Fifth Amendment and INA based on the analytical framework provided in *Zadvydas*, the Court finds that Petitioner's release, subject to his prior order of supervision, is warranted. *See Zadvydas*, 533 U.S. at 699–700; *see also Trejo v. Warden of ERO El Paso E. Montana*, No. EP-25-CV-401-KC, 2025 WL 2992187, at *11 (W.D. Tex. Oct. 24, 2025) (ordering in the alternative that Petitioner be released from custody subject to reasonable terms of supervision under *Zadvydas*).

Second, Petitioner requests that the Court prohibit Respondents from re-detaining Petitioner in the future absent proof of changed circumstances making his removal reasonably foreseeable. Third, Petitioner requests that the Court prohibit Respondents from removing petitioner to a third country without providing Petitioner and Petitioner's counsel with adequate

---

[3] Because the Court finds that Petitioner puts forth a successful argument under the Fifth Amendment right to due process, it need not determine whether the stated policy violates the APA.

notice of intent to seek removal to a third country and due process in the form of an opportunity to seek to reopen Petitioner's immigration court proceedings to seek fear-based relief from removal.  For the reasons discussed above, the Court finds that these forms of relief are warranted.

## IV.    CONCLUSION

**IT IS HEREBY ORDRED** that Petitioner's Amended Petition for Habeas Corpus Relief under 28 U.S.C. § 2241, (ECF No. 9), is **GRANTED.**

**IT IS FURTHER ORDERED** that Petitioner must be released from detention within 48 hours subject to the conditions of his prior order of supervision.[4] *See* 8 U.S.C. § 1231(a)(3).

**IT IS FURTHER ORDERED** that Respondents must arrange and pay for Petitioner's safe and imminent return to Las Vegas, Nevada upon his release from Columbia Care Center/ICE custody.

**IT IS FURTHER ORDERED** that the parties must file a Joint Status Report on the docket no later than March 4, 2026, to certify compliance with the Court's Order.

**IT IS FURTHER ORDERED** that Respondents are enjoined from re-detaining Petitioner in the future absent proof of changed circumstances making his removal reasonably foreseeable.

**IT IS FURTHER ORDERED** that Respondents are enjoined from removing Petitioner to a third country without providing Petitioner with adequate notice of intent to seek removal to a third country and due process in the form of an opportunity to seek to reopen Petitioner's immigration court proceedings to seek fear-based relief from removal.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Status Check, (ECF No. 14), is **DENIED** as moot.

---

[4] The Court allows 48 hours to release Petitioner based on Respondents' request for such time so that arrangements may be made for a safe and orderly daytime release.

Counsel for Respondents are directed to immediately provide notice of this Order to the parties they represent.

**DATED** this __27__ day of February, 2026.

_____
Gloria M. Navarro, District Judge
United States District Court